1
2
3
4
5
6
7
8         **UNITED STATES DISTRICT COURT**
9         **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  JESUS ARGELO MACHIN, | Civil No.   09-444 IEG (WVG) |
| 12                              Plaintiff, | **ORDER GRANTING DEFENDANT'S** |
| 13 | **MOTION TO DISMISS AND FOR SUMMARY JUDGMENT** |
| 14        vs. | **PURSUANT TO FED.R.CIV.P. 12(b)(6)** |
| 15  OFFICER COSTAS;  METROPOLITAN | **AND FED.R.CIV.P. 56(c)** |
| 16  CORRECTIONAL CENTER;  DOES 1-10, | **[Doc. No. 9]** |
| 17                           Defendants. | |

18  **I.      Procedural Background**

19          Jesus Argelio Machin ("Plaintiff"), a former criminal pretrial detainee at the Metropolitan

20  Correctional Center ("MCC") in San Diego, is proceeding in pro se and *in forma pauperis* with

21  this civil action, which he filed pursuant to 42 U.S.C. § 1983.

22          Plaintiff claims to have been injured on August 11, 2005 at MCC while he was on kitchen

23  duty and under the supervision of Defendant Kevin Costa, erroneously sued as "Officer

24  Costas."[1]  Plaintiff claims Costa violated his right to be free from cruel and unusual punishment,

25  intentionally inflicted severe mental and emotional distress upon him and was negligent in

26

27          [1] Plaintiff's Complaint names as Defendants Officer Costas, the MCC and John Does 1-10.  The
only person served with the Complaint and summons, and thus, the only party moving to dismiss and/or
28  for summary judgment is Officer Kevin Costa.  *See* Compl. at 1, 2.

violation of the Eighth Amendment and several provisions of the California Penal Code. (Compl. at 3-4.) Plaintiff seeks injunctive relief in the form of a grand jury investigation as well as "reasonable fees" and punitive damages. (*Id.* at 5.)

On July 31, 2009, Defendant Costa filed a Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6) and for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 9]. On August 7, 2009, in an abundance of caution, the Court provided Plaintiff with written notice of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) [Doc. No. 10], despite the fact that he was not incarcerated at the time he filed this action, nor does the docket reflect he is currently incarcerated. Nevertheless, Plaintiff has failed to file any Opposition.

## II.    Proper Parties

First, the Court notes that Plaintiff includes both the MCC and John Does 1-10 in the caption of his Complaint as Defendants. However, Plaintiff has not effected service upon the MCC, nor has he identified or served any of the Does. Because Plaintiff has failed to effect service of the summons and Complaint upon these purported Defendants, the Court has no personal jurisdiction over them and they are not considered parties to this action. *See* FED.R.CIV.P. 4(m); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant)," under FED.R.CIV.P. 4, "a court ordinarily may not exercise power over a party the complaint names as a defendant." ); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a ... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

Thus, to the extent Plaintiff's Complaint includes allegations against the MCC and John Does 1-10, the Court dismisses the action for insufficient service and lack of personal jurisdiction. *See* FED.R.CIV.P. 4(m); *Murphy Bros.*, 526 U.S. at 350; *Omni Capital*, 484 U.S. at 104.

/ / /

/ / /

### III.    Factual Background

On August 11, 2005, Plaintiff was a criminal pretrial detainee at MCC.  (Compl. at 3; Def.'s Exs. A & B.) A few weeks before, Plaintiff was examined by MCC medical personnel, who noted that while Plaintiff had undergone seven surgeries on his left thumb between 1982 and 1988, he was nevertheless "qualified for regular [work] duty." (Def.'s Ex. H.)  On August 4, 2005, Plaintiff was assigned to work in the MCC kitchen under the supervision of Defendant Costa, the Cook Supervisor.  (Compl. at 3, 8; Defs.' Ex. D, Inmate Work Detail; Ex. E, Decl. of Kevin A. Costa [hereafter "Costa Decl."] ¶ 2.)    Plaintiff claims he was "comfortable ... washing dishes," but Costa "transferred [him] to another line of work," even though Plaintiff informed  Costa of his previous surgeries. (Pl.'s Affidavit in Supp. of Compl. [hereafter "Pl.'s Ex. A"] at 9.)  Plaintiff claims Costa threatened to place him in the hole if he didn't follow orders, so he "continue[d] to work with extreme caution." (*Id.*)  Despite his caution, however, Plaintiff claims "one of [his] co-worker[s] push[ed] a food cart," and it "collid[ed] with [his] left hand and hit [his] left thumb," causing him "unimaginable pain." (*Id.*)

Plaintiff informed Costa he was in "great pain and ... need[ed] to see ... medical personnel." (Pl.'s Ex. A.)  Plaintiff alleges Costa "just told [him] to sit down." (*Id.*)  After "more than one hour," Plaintiff claims he "beg[ged]" Costa to take him to the "medical floor," but Costa replied, "Your hand is not ... falling [off]," and that he would "bring [Plaintiff] to the Dr. when [he] fel[t] like it." (*Id.*)  Plaintiff claims he was injured at 11:45 a.m, and to have waited two hours "in great pain" before Costa transported him to medical, (*id.*); however, the MCC's medical records report Plaintiff was injured at 1:30 p.m. and transported to Health Service at 2:40 p.m.  (Def.'s Ex. F.)

Defendant Costa does not remember Plaintiff or the incident in the kitchen on August 11, 2005.  (Def.'s Ex. E [hereafter "Costa Decl."] ¶ 3.)  However, as both a Bureau of Prison's ("BOP") employee and a Cook Supervisor, Costa has been trained on BOP medical emergency procedures.  (*Id.* ¶¶ 8-9.)  Costa claims that in an emergency, "such as when an inmate is unconscious or is bleeding profusely, it is [his] custom and practice to push [his] body alarm" and to "initiate preliminary first aid until medical personnel arrive." (*Id.* ¶ 10.)  In non-

emergency situations, Costa "call[s] the Health Services Department," and describes the incident to medical personnel" who ask him questions in order to assess the severity of injury and investigate whether any security concerns prevent Plaintiff's transport to Health Services. (Id. ¶ 11.) If no security concerns exist, Costa calls an escort officer. (*Id.*) Costa claims he has "no control over when the escort officer reports to the kitchen," but once one does, he "give[s] the officer the inmate's work crew card, which contains the inmate's key information and picture." (*Id*.) Once an injured inmate is escorted to Health Services, Costa claims, as a Cook Supervisor, he has no further involvement in the inmate's medical problem. (*Id.*) Thus, Costa asserts that while he does not recall Plaintiff or his injury, he "would not have been involved in giving [him] any medical care," "would not have had any more interactions with him, unless he came back to work in the kitchen," and would have had "no reason" to "delay[] reporting [Plaintiff's] injury or assisting him in obtaining medical care." (*Id.* ¶ 12.)

For his part, Plaintiff claims that once he arrived at Health Services on August 11, 2005, "one of the nurses look[ed] at his hand," "gave [him] a pill," and "put a bandage and wrap around [his] thumb," before sending him back to his housing unit. (Pl.'s Ex. A.) Plaintiff alleges the medication "did not stop the pain." (*Id.*) Plaintiff refers only once more to his thumb injury and Defendant Costa:  on August 17, 2005, he claims to have been "recalled to work in the kitchen," and threatened with seclusion if he did not follow orders. (*Id.*) Plaintiff claims he still suffered from pain and a swollen thumb, which he reported to "the employee of the facility." (*Id.*) Plaintiff asserts that while he was "forced" to report for kitchen duty, he "just s[a]t in pain ... not able to do anything." (*Id.*) Later on the same day Plaintiff claims to have been stuck in a hot elevator for two hours along with 24 other individuals, and alleges Defendant Costa "did not even use the radio in his possession to get help." (*Id.*)

Dr. Debra Lucy, the Clinical Director of the Health Services at MCC, however, has submitted a sworn Declaration recounting Plaintiff's medical treatment, as well as copies of the medical records which chronicle his care from the date of the incident, August 11, 2005, through December 9, 2005. (Def.'s Ex. G, I-Q, S-U.) According to Dr. Lucy, Plaintiff was first assessed by a physician's assistant, Virgilio Camagay, in the Health Services Unit on August 11, 2005.

(Def.'s' Ex. G ¶ 6;  Def.'s Exs. F, J.)  Camagay noted minimal swelling of Plaintiff's left thumb with a limited range of motion, no bruising, no rupture and no active bleeding.  (Def.'s Ex. G ¶ 6.)  An x-ray, taken of Plaintiff's left thumb that same day showed "no acute fracture," but did show Plaintiff had a "fusion" of the "metacarpophalangeal joint" as the result of previous surgeries as well as an implanted "plate and screws for stabilization." (*Id; see also* Def.'s Ex. I "Radiological Consultation Request/Report" dated August 11, 2005.)  Plaintiff was prescribed 800 mg of Ibuprofin three times a day to "reduce swelling and pain."  (Def.'s Ex. G ¶ 6.)

On August 16, 2005, Plaintiff returned to Health Services complaining of increased pain and throbbing in his left thumb.  (*Id.* ¶ 7; *see also* Def.'s Ex. K "Chronological Record of Medical Care" dated August 16, 2005.)  Plaintiff's thumb was no longer swollen, but "redness measuring 3 mm was noted in the web between [his] thumb and index finger."  (Def.'s Ex. G ¶ 7.)  Plaintiff was prescribed an anti-steroidal medication, given a bandage and was referred to a physician.  (*Id.*)

On August 25, 2005, Plaintiff again returned to Health Services complaining of "throbbing pain in his left thumb" radiating into his arm.  (Def.'s Ex. L.) Plaintiff's thumb was again swollen and a blister was noted, as well as an abrasion, discharge and a bruise around the base of the thumb.  (Def.'s Ex. G ¶ 8.)  At this time, Plaintiff was "diagnosed with an infection," "administered an injection to combat the infection," "prescribed oral antibiotics," and had his wound dressed.  (*Id.*)  Another x-ray and lab tests were ordered.  (*Id.*; *see also* Def.'s Exs. M, N.)  Plaintiff's x-ray results did not differ from those taken on August 11, 2005.  (Def.'s Ex. G at ¶ 8; Def.'s Ex. N.)  Plaintiff's lab culture, taken on August 25, 2005 and released on August 27, 2005, confirmed he had a staph infection in his left hand wound, but "no MRSA [was] isolated."  (Def.'s Ex. M.)

On August 26, 2005, Plaintiff returned to Health Services, and had removed the dressing from the day before.  (Def.'s Ex. G ¶ 9, Def.'s Ex. L.)  Dr. Lucy claims Plaintiff was directed not to remove the dressing because it could worsen his infection, which nevertheless showed signs of improvement– "no discharge, less swelling and less redness."  (*Id.*)  Plaintiff's hand was then soaked in betadine, a topical antiseptic.  (*Id.*)  Plaintiff was thereafter examined every day

in Health Services from August 26, 2005 through September 14, 2005, to "check the status of the infection." (*Id.*)  As of August 29, 2005, Plaintiff's hand showed no "open areas" or drainage. (*Id.* ¶ 12.)

On August 26, 2005, Dr. Lucy also authorized Plaintiff's referral to an orthopedic surgeon who specializes in hand surgery. (Def.'s Ex. G ¶ 10, Def.'s Ex. P.)  Dr. Lucy claims she did not send the referral to the Utilization Review Committee's ("URC") because as Chair of the URC, she "knew the referral would be approved." (Def.'s Ex. G ¶ 10.)  Dr. Lucy claims this accelerated Plaintiff's referral "by three to four weeks." (*Id.*)

Plaintiff's surgical referral was coordinated through  the United States Marshal Service, which was responsible for providing an escort. (*Id.* ¶ 11.)  On September 15, 2005,  Plaintiff was examined by Dr. Jose Otero, an orthopedic surgeon at Alvarado Hospital,  (*Id.* ¶¶ 11, 13; Def.'s Ex. O.)  According to Dr. Lacy, Dr. Otero "diagnosed Plaintiff with nerve damage as a result of the previous surgeries," and "recommended surgery to remove the hardware implanted during those surgeries." (Def.'s Ex. G ¶ 13.)

On October 5, 2005, Dr. Otero performed surgery on Plaintiff's left hand. (*Id.*, Def.'s Ex. Q.)  During the surgery, Dr. Otero found a "rigid, severely scarred thumb, both on the dorsum and on the palmar side." (Def.'s Ex. Q.)  Otero removed a "plate and multiple screws," although three screws broke as he was attempting to remove them, and the shafts had to be left in the bone. (*Id.*)  Dr. Otero further noted severe scarring, tendon, nerve and tissue damage, some of which  he attributed to "previous multiple infections." (*Id.*)  While "the extent of the preexisting damage limited some ... surgical options that would have otherwise been attempted," (Def.'s Ex. G ¶ 13), Dr. Otero was able to repair a dislocated extensor pollicis longus tendon, perform neurolysis on some digital nerves and to use some soft tissue from the thenar eminence and palm to cover the nerves and isolate them from the heavily scarred skin. (Def.'s Ex. Q.)  Afterwards, Otero applied a fiberglass cast "from the tip of the thumb to the elbow area in standard fashion." (*Id.*)  Dr. Otero's operative notes indicate the procedure was "well tolerated" and Plaintiff was sent to recovery in satisfactory condition. (*Id.*)

/ / /

09cv444

Plaintiff returned to Dr. Otero for a surgical follow-up consultation on October 21, 2005. (Def.'s Ex. G ¶ 14, Def.'s Ex. S.)  Dr. Otero noted Plaintiff had "no complaints," and was "doing well."  (Def.'s Ex. S.)  Dr. Otero recommended a follow-up appointment in two weeks in order to remove Plaintiff's cast.  (*Id.*)  Dr. Lucy further claims Plaintiff was recommended for, and provided physical therapy "in house."  (Def.'s Ex. G ¶ 14.)

On November 23, 2005, Dr. Lucy again referred Plaintiff to Dr. Otero because he continued to complain of pain in his left hand.  (*Id.*, Def.'s Ex. T.)  On December 9, 2005, Dr. Lucy claims Plaintiff was examined by Dr. Otero, who recommended that therapy continue and a return follow-up appointment in four weeks.  (Def.'s Ex. G ¶ 14, Def.'s Ex. U.)  However, Plaintiff was transferred from MCC prior to that time, and MCC was "no longer involved in [Plaintiff's] medical care."  (Def.'s Ex. G ¶ 14.)

Plaintiff has attached to Complaint, however, copies of medical records post-dating his transfer from MCC which indicate an ongoing course of medical examinations, x-rays and treatment for his hand at both FMC Fort Worth and FCI Taft.  *See* Compl. Ex. B [Doc. No. 1-2] at 60-69, [Doc. No. 1-1] at 1-30, 52-54, 56-80, 110-119.

## IV.    Defendants' Motion

### A.    FED.R.CIV.P. 12(b)(6)  Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.  2001).  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [typically] look only at the face of the complaint to decide a motion to dismiss."  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  Thus, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside  the pleadings, except for exhibits which are attached.  *See* FED.R.CIV.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.");  *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

While allegations of material fact are accepted as true and construed in the light most favorable to the nonmoving party, *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), the court need not accept as true generic legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal,* 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then decide whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* at 1949. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*; *Twombly,* 550 U.S. at 570 (when a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.").

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

/ / /

09cv444

**B.      FED.R.CIV.P. 56 Standard of Review**

Summary judgment is proper where there is no genuine issue of material fact in dispute and the moving party has shown it is entitled to judgment as a matter of law. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing FED.R.CIV.P. 56(c)).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED.R.CIV.P. 56(c)); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Bias*, 508 F.3d at 1218. To avoid summary judgment, the non-moving party is "required to present significant, probative evidence tending to support h[is] allegations," *Bias*, 508 F.3d at 1218 (citations omitted), and must point to some evidence in the record that demonstrates "a genuine issue of material fact [which], with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56; *Celotex*, 477 U.S. at 323)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, to "defeat a summary judgment motion ..., the non-moving party 'may not rest upon the mere allegations or denials' in the pleadings. FED.R.CIV.P. 56(e); *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (opposing party cannot rest solely on conclusory allegations of fact or law). Instead, the non-moving party "must establish the existence of a genuine factual dispute on the basis of admissible evidence; bare allegations without evidentiary support are insufficient t       o       s       u       r       v       i       v       e

1   ///

2   summary judgment." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019,

3   1033 n.14 (9th Cir. 2008).

4      **C.      Unopposed Summary Judgment**

5      This Court's Local Rules further provide that "[i]f an opposing party fails to file papers

6   in the manner required by Local Rule 7.1(e)(2), that failure may constitute a consent to the

7   granting of a motion or other request for ruling by the court."  S.D. CAL. CIVLR 7.1(f)(3)(c).

8   However, the court may not simply grant summary judgment because the nonmovant has failed

9   to respond.  *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003) (discussing S.D. CAL.

10  CIVLR 7.1(f)(3)(c)).  Rather, the court must consider whether the movant's papers are sufficient

11  on their face to sustain summary judgment.  *Id.* at 1183 (citing *Marshall v. Gates*, 44 F.3d 722,

12  725 (9th Cir. 1995); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) ("[T]he

13  party opposing summary judgment is under no obligation to offer affidavits or any other

14  materials in support of its opposition.  Summary judgment may be resisted and must be denied

15  on no other grounds than the movant has failed to meet its burden of demonstrating the absence

16  of triable issues.")).

17     Here, while Plaintiff has failed to oppose Defendant's Motion, he has filed two affidavits,

18  one in support of his Motion to Proceed *In Forma Pauperis* [Doc. No. 2], and one which is

19  attached at Exhibit A to his Complaint, both which verify that the "contents of the complaint"

20  and the declarations in his affidavit are true under penalty of perjury and in conformance with

21  28 U.S.C. § 1746.  *See* Compl. at 9.  A verified complaint or motion may be used as an opposing

22  affidavit under FED.R.CIV.P. 56.  *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995

23  (complaint);  *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (motion).

24     Thus, to the extent Plaintiff's Complaint and his attached affidavit are based on personal

25  knowledge and set forth specific facts admissible in evidence, they may be considered as

26  opposing affidavits  under FED.R.CIV.P. 56(e); *Schroeder*, 55 F.3d at 460; *see also California*

27  *Pro-Life Council v. Randolph*, 507 F.3d 1172, 1176 (9th Cir. 2007) ("'A verified complaint may

28  serve as an affidavit for purposes of summary judgment if  [1] it is based on personal knowledge

1   ///

2

3   and if [2] it sets forth the requisite facts with specificity.'") (quoting *Moran v. Selig*, 447 F.3d

4   748, 760 n.16 (9th Cir. 2006) (citation omitted)).

5       **D.    Defendants' Arguments**

6       Defendant seeks to dismiss some of Plaintiff's claims as a matter of law pursuant to

7   FED.R.CIV.P. 12(b)(6), and a summary judgment pursuant to FED.R.CIV.P. 56 as to others.  First,

8   Defendant Costa seeks to dismiss Plaintiff's common law tort claims for intentional infliction

9   of emotional distress and negligence for failing to state a claim pursuant to FED.R.CIV.P.

10  12(b)(6) on grounds that:  1) he is statutorily immune under the Federal Employees Liability and

11  Tort Compensation Act ("FELRTCA") (Def.'s P&A's in Supp. of Mot. [Doc. No. 9-2] at 9-10);

12  2) to the extent Plaintiff's tort claims may be construed against the United States under the

13  Federal Tort Claims Act, 28 U.S.C. § 2679(d)(1), they are pre-empted by the Inmate Accident

14  Compensation Act, 18 U.S.C. § 4126,  (*id.* at 10-11); and 3) a civil rights action may not be

15  brought against a federal actor pursuant to 42 U.S.C. § 1983.  (*Id.* at 12.)

16      Defendant Costa further seeks summary judgment pursuant to FED.R.CIV.P. 56 on

17  grounds that:  1) to the extent Plaintiff's medical care claims arise under *Bivens v. Six Unknown*

18  *Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), no evidence in the

19  record shows Costa was personally involved in providing Plaintiff any constitutionally

20  inadequate medical care,  (*id.* at 12-14); 2) he is entitled to qualified immunity as to any damages

21  Plaintiff seeks because no genuine issues of material fact exist to show that Costa was

22  deliberately indifferent to Plaintiff's medical needs (*id.* at 14-18), and the "application of the

23  Fifth Amendment to the circumstances presented was not clearly established at the time of

24  Plaintiff's injury."  (*Id.* at 18-19.)

25      As noted previously, Plaintiff has not opposed Defendant's Motion; however, to the

26  extent his Complaint and affidavit attached comply with 28 U.S.C. § 1746, they will be

27  construed as opposing affidavits under FED.R.CIV.P. 56(e); *Schroeder*, 55 F.3d at 460;

28  *California Pro-Life Council*, 507 F.3d at 1176.

1    / / /

2    / / /

3         **1.    Common Law Tort Claims**

4              **a.    Statutory Immunity under FELRTCA**

5         Defendant Costa first claims immunity from Plaintiff's state law tort claims for alleged

6    acts of negligence and the intentional infliction of emotional distress because as a federal

7    employee acting within the scope of his employment, the Federal Employees Liability Reform

8    and Tort Compensation Act (FELRTCA) acts as a bar to Plaintiff's claims.  (Defs.'s P&A's in

9    Supp. of Mot. [Doc. No. 9-2] at 9-10.)

10        The Federal Tort Claims Act (FTCA) authorizes "claims against the United States, for

11   money damages ... for injury or loss of property ... caused by the negligent or wrongful act or

12   omission of any employee of the Government while acting within the scope of his office or

13   employment."  28 U.S.C. § 1346(b)(1).  *Ali v. Federal Bureau of Prisons*, 522 U.S. 831, 835

14   (2008).  While Plaintiff has not expressly named the United States as a Defendant in this action,

15   and a FTCA claim may not be brought against a federal employee in his official capacity, *see*

16   *United States v. Johnson*, 481 U.S. 681, 700 (1987) ("[L]iability under the FTCA is imposed

17   upon the Government, and not upon individual employees."), the FELRTCA, also known as the

18   Westfall Act,[2] makes the FTCA the exclusive remedy for any "for injury or loss of property, or

19   personal injury ... arising or resulting from the negligent or wrongful act or omission of any

20   employee of the Government while acting within the scope of his office or employment."  28

21   U.S.C. § 2679(b)(1).  *See Osborn v. Haley*, 549 U.S. 225, 237 (2007) (describing the Westfall

22   Act as "a measure designed to immunize covered federal employees not simply from liability,

23

24        [2]  The Westfall Act was enacted in response to *Westfall v. Erwin*, 484 U.S. 292 (1988).  In
     *Westfall*, the Supreme Court held that the judicially created doctrine of official immunity did not provide
25   absolute immunity to Government employees for torts committed in the scope of their employment.
     *United States v. Smith*, 499 U.S. 160, 162 (1991).  Instead, the Supreme Court ruled that such official
26   immunity required a case-by-case determination, dependent on whether "the contribution to effective
     government in particular contexts" from granting immunity "outweighs the potential harm to individual
27   citizens."  *Id.* at 162 (citing *Westfall*, 484 U.S. at 299).  In response to *Westfall*, Congress enacted the
     FELRTCA to establish an absolute immunity for Government employees that the Court declined to
28   recognize under the common law in *Westfall*.  "The Act confers such immunity by making an FTCA
     action against the Government the exclusive remedy for torts committed by Government employees in
     the scope of their employment."  *Smith*, 499 U.S. at 162-63.

09cv444

1    but from suit.") (internal citations omitted); *Pelletier v. Federal Home Loan Bank of San*

2    *Francisco*, 968 F.2d 865, 873-74 (9th Cir. 1992).

3            Thus, if the United States Attorney certifies that the employee was acting within the scope

4    of his or her employment at the time Plaintiff was injured, the United States is substituted as the

5    defendant in the action, and the FELRTCA "acts as a general grant of immunity [from suit] to

6    [the] government employee for all such acts." *Castenada v. United States*, 546 F.3d 682, 695

7    (9th Cir. 2008), *cert. granted sub. nom*, *Migliaccio v. Castaneda*, __S.Ct. __, 2009 WL

8    1649115, 77 USLW 3692 (U.S. Sep. 30, 2009) (No. 08-1529) (citing 28 U.S.C. § 2679(d)(1)).

9            Here, the United States Attorney has certified pursuant to 28 U.S.C. § 2679(d) and 28

10   C.F.R. § 15.3, that "United States Bureau of Prisons ("BOP") Correctional Officer Kevin Costa

11   (incorrectly named as "Officer Costas") ...was acting within the scope of his employment as a

12   BOP employee, with regard to the events described in Plaintiff's Complaint." (Def.'s Ex. V.)

13   Thus, Plaintiff's state law tort claims based on negligence and the intentional infliction of

14   emotional distress, whether they arise from the circumstances surrounding Plaintiff's initial

15   injury on August 11, 2005 or his medical care afterward, may not proceed against Defendant

16   Costa. *Castaneda*, 546 F.3d at 695-96. Pursuant to 28 U.S.C. § 2679(d)(1), the United States

17   is substituted as defendant, and Plaintiff's state-law tort claims "fall[] under the governance of

18   the Federal Tort Claims Act." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995).

19           Accordingly, the Court GRANTS Defendant Costa's Motion to Dismiss Plaintiff's state

20   law tort claims as precluded by the FELRTCA.

21                   **b.      Pre-emption under Inmate Accident Compensation Act**

22           Defendant also seeks dismissal of Plaintiff's claims under the FTCA on grounds that they

23   are pre-empted by the Inmate Accident Compensation Act, 18 U.S.C. § 4126. (*See* Def.'s

24   P&A's in Supp. of Mot. at 10-11.) The Court agrees.

25           The FTCA "was designed to remove the sovereign immunity of the United States from

26   suits in tort and, with certain specific exceptions, to render the Government liable in tort as

27   private a individual would be in like circumstances." *Sosa v. Alvarez-Machain*, 542 U.S.

28   692, 700 (2004) (internal citation omitted); *see also* 28 U.S.C. § 1346(b). The Inmate

1   Compensation Act, 18 U.S.C. § 4126, is one of those exceptions in that it provides an alternate

2   exclusive means by which a federal prisoner injured on the job may recover for work-related

3   injuries through the Prison Industries Fund.  *See United States v. Demko*, 385 U.S. 149 (1966);

4   *Vander v. U.S. Dep't of Justice*, 268 F.3d 661 (9th Cir. 2001); 18 U.S.C. § 4126(c)(4); 28 C.F.R.

5   § 301.301(b); *see also Paschal v. United States*, 302 F.3d 768, 769 (7th Cir. 2002) (finding that

6   18 U.S.C. § 4126(c), providing exclusive remedy for federal inmates injured while working,

7   applies to federal prisoners and pretrial detainees alike).

8       In *Demko*, a federal prisoner received compensation under 18 U.S.C. § 4126.  *Demko*, 385

9   U.S. at 149.  He later brought suit in federal court under the FTCA, alleging that his injury was

10  due to the government's negligence.  *Id.* at 150.  However, the Supreme Court held that the

11  Demko's recovery under Prison Industries Fund was his exclusive remedy, further noting that

12  18 U.S.C. § 4126 is "an adequate substitute for a system of recovery by common-law torts."  *Id.*

13  at 153.

14      The Ninth Circuit has similarly refused to allow a federal prisoner to proceed in a suit

15  under the Federal Tort Claims Act for work-related injuries.  *Vander*, 268 F.3d at 663.  In

16  *Vander*, a federal prisoner alleged, like Plaintiff here, that he had a pre-existing knee injury

17  which he strained while working on a prison work detail and which he claimed was exacerbated

18  when  prison officials acted negligently by delaying  medical treatment.  *Id.*  Relying on

19  *Demko*, the Ninth Circuit found Vander's claims barred under the FTCA because 18 U.S.C. §

20  4126 provides the exclusive remedy for work-related injuries.  *Id*. at 663-64.  The Court

21  expressly found that claims related to injuries that are exacerbated as a result of prison officials'

22  negligent treatment are also barred if the cause of the original injury is work-related.  *Id.* at 663-

23  64; see also 28 C.F.R. § 301.301(b) ("Compensation may ... be paid for work-related injuries *or*

24  *claims alleging improper medical treatment of a work-related injury."* )

25      Plaintiff's case is indistinguishable from *Vander*.  Like Vander, Plaintiff had a pre-

26  existing injury which was further aggravated as a result of an on-the-job kitchen accident at

27  MCC.  (Compl. at 3.)  Plaintiff also claims, like Vander, to have been denied proper medical

28  treatment as a result of the kitchen injury.  (*Id*.)  Thus, because Plaintiff suffered a work-related

injury, an FTCA action is barred by 18 U.S.C. § 4126(c) and the regulations thereunder. *Vander*, 268 F.3d at 664; *Demko*, 385 U.S. at 152 (noting nothing in legislative history of FTCA suggests Congress' intent to supplement tort recovery for prisoners already protected by 18 U.S.C. § 4126).

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's state law tort claims under the FTCA as pre-empted by 18 U.S.C. § 4126.

### 2. Constitutional Torts

#### a. *Bivens* not 42 U.S.C. § 1983

Defendant also moves to dismiss Plaintiff's Complaint to the extent he alleges the violation of his Eighth Amendment right to be free from cruel and unusual punishment and seeks relief pursuant to the Civil Rights Act, 42 U.S.C. § 1983.[3] (Def.'s P&A's in Supp. of Mot. at 12; Compl. at 1, 4.)

Defendant is correct: section 1983 requires allegations of a constitutional violation by a person acting under color of state, not federal law. *See* 42 U.S.C. § 1983; *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) ("[B]y its very terms, § 1983 precludes liability in federal government actors."). However, because Plaintiff is proceeding pro se, the Court construes his Complaint to arise under *Bivens*, the "federal analog to suits brought under ... 42 U.S.C. § 1983." *Iqbal*, 129 S.Ct. at 1948 (citing *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)). *Bivens* "established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see*

---

[3]  Plaintiff also alleges Defendant Costa committed "serious felon[ies]" in violation of the California Penal Code.  (Compl. at 4.)  While Defendant does not address this assertion, the Court hereby dismisses them sua sponte pursuant to 28 U.S.C. § 1915(e)(2), as there is no question that Plaintiff has no private cause of action for violations of state criminal laws under § 1983 or *Bivens*.  *See Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) (explaining that a violation of state law may not form the basis of a section 1983 action); *Ellis v. City of San Diego*, 176 F.3d 1183, 1189-90 (9th Cir. 1999) (affirming dismissal of alleged violations of 16 sections of the California Penal Code and one violation of the California Health and Safety Code on grounds that "these code sections do not create enforceable individual rights."); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (court must sua sponte dismiss any civil action brought pursuant to 28 U.S.C. § 1915(a), which is frivolous, malicious, fails to state a claim, or seeking damages from defendants who are immune).

1     *also Vaccarro v. Dobre*, 81 F.3d 854 (9th Cir. 1996) (holding that 18 U.S.C. § 4126 does not bar

2     a *Bivens* claim).

3     / / /

4         To state a private cause of action under *Bivens*, Plaintiff must allege:  (1) the violation of

5     a right secured by the Constitution of the United States, and (2) that the alleged deprivation was

6     committed by a federal actor.  *See Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) (§ 1983

7     and *Bivens* actions are identical save for the replacement of a state actor under § 1983 by a

8     federal actor).  In this case, Plaintiff claims Defendant Costa, while acting under color of federal

9     law, violated his Eighth Amendment right to be free from cruel and unusual punishment by

10     delaying his access to medical care.  (Compl. at 4, 8-9.)

11                 **b.**       **Personal Liability and Causation**

12         Even if construed to arise under *Bivens*, Defendant Costa seeks dismissal of Plaintiff's

13     Eighth Amendment claims[4] on grounds that Plaintiff has failed to adequately allege Costa was

14     either personally involved in providing or failing to provide Plaintiff medical care or otherwise

15     caused Plaintiff's injury.  (Def.'s P&A's in Supp. of Mot. at 12-14.)

16         "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must

17     plead that each Government-official defendant, through the official's own individual actions, has

18     violated the constitution."  *Iqbal*, 129 S.Ct. at 1948.  Like all other facts on a motion to dismiss,

19     facts alleging causation are presumed to be true.  *See Twombly*, 550 U.S. at 556.   And "[w]hile

20     legal conclusions can provide the framework of a complaint, they must be supported by factual

21     allegations."  *Iqbal*, 129 S.Ct. at 1950.  If this "factual content, and reasonable inferences from

22     that content ... are plausibly suggestive of a claim entitling the plaintiff to relief," the complaint

23     will survive a motion to dismiss it.  *Moss*, 572 F.3d at 969.

24         A person deprives another of a constitutional right where that person "does an affirmative

25     act, participates in another's affirmative acts, or omits to perform an act which [that person] is

26

27       [4]  Because Plaintiff was a federal pretrial detainee, and not a convicted prisoner at the time he was injured, (*see* Def.'s Ex. C), it is the Fifth Amendment's due process clause, and not the Eighth

28     Amendment, which applies.  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("The Due Process Clause protects a pretrial detainee from ... punishment." (citing *Bell v. Wolfish*, 441 U.S. 520, 535-539 (1979)).

legally required to do that causes the deprivation of which the complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  Indeed the "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743-44; *see also Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004)).

In his Complaint, Plaintiff alleges Costa as "supervisor" of the MCC kitchen "substantially abused [his] authority by denying ... Plaintiff for medical attention," and that he has suffered "unimaginable pain, sleepless nights, severe mental anguish, verbal abuse[], emotional distress and [a] series of surgeries as the result of the denial of medical attention." (Compl. at 3.)  In the affidavit submitted in support of his Complaint, Plaintiff specifically alleges only that after he was injured in the kitchen on August 11, 2005, Defendant Costa told him to sit, that his hand was not "falling [off]," and that he would "bring [Plaintiff] to the Dr. when [he] fel[t] like it."  (*Id.* at 8.)  Plaintiff thereafter claims to heave waited from 2 hours in the kitchen before "Costa[] finally transferred [him] to the medical floor."  (*Id.* at 9.)

Once in the infirmary, Plaintiff claims to have "waited another two (2) hours and thirty minutes," before having his wounds treated.  (*Id.*)  Plaintiff also claims to have been denied medical attention for 21 days after the August 11th incident, "despite [] everyday begging for medical attention."  (*Id.* at 4.)  Critically, however, Plaintiff does not identify the person or persons to whom his entreaties were directed nor by whom they were denied.  In fact, the only other mention of Defendant Costa involves an elevator malfunction on August 17, 2005, and Costa's failure to "use the radio in his possession to get help."  (*Id.* at 9.)  Nowhere in his Complaint, affidavit, or in the exhibits attached to Plaintiff's Complaint, is Defendant Costa alleged to have been directly or indirectly involved in either providing or failing to provide Plaintiff with medical care.

Thus, in this case, the Court finds Plaintiff has failed to plead sufficient factual content to support his conclusory claim that Costa's initial response to Plaintiff's injury on August 11, 2005 caused a violation of his constitutional rights.  *See Iqbal*, 129 S. Ct. at 1948 ("Threadbare

09cv444

recitals of the elements of a cause of action, supported merely by conclusory statements," are insufficient to survive a motion to dismiss); *Johnson*, 588 F.2d at 743; *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overrruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay or denial was harmful).

The Court further finds Plaintiff has failed to provide sufficient factual content that might plausibly suggest it was reasonably foreseeable to Costa that his actions in the kitchen on August 11, 2005 would lead to any further injury. *See Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1044 (9th Cir. 1994) (where official did not directly cause a constitutional violation, plaintiff must show the violation was reasonably foreseeable to him); *see also Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (finding prison official who "played [no] role in denying [plaintiff] medical care" "c[ould not] be held vicariously liable for the fault of [medical] personnel at [the prison].")

Thus, the Court GRANTS Defendant Costa's Motion to Dismiss Plaintiff's constitutional claims against Defendant Costa on grounds because Plaintiff has failed to plead enough facts to state a constitutional claim for relief which is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570; *Moss*, 572 F.3d at 969.

### c. Qualified Immunity

Finally, Costa seeks summary judgment arguing that even if Plaintiff's Complaint alleges facts sufficient to state a constitutional claim, he is qualifiedly immune because no evidence in the record shows he acted with deliberate indifference to Plaintiff's serious medical needs, or that he violated a clearly established law. (Def.'s P&A's in Supp. of Mot. at 14-19.)

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or

constitutional right;  and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court has recently held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."  *Pearson v. Callahan*,__U.S. __, 129 S.Ct. 808, 818  (2009).

If the Court finds that Plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201.  Similarly, if the Court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity without determining whether the allegations in fact make out a statutory or constitutional violation.  *Pearson*, 129 S.Ct. at 818.

As noted above, Plaintiff's constitutional claims against Defendant Costa are rooted in the Fifth Amendment's Due Process clause, not the Eighth Amendment's prohibition on cruel and unusual punishment.  *Castaneda*, 546 F.3d at 688 n. 6 (citing *Bell v. Wolfish*, 441 U.S. 520, 536-37 & n.16 (1979)); *Conn v. City of Reno*, 572 F.3d 1047, 1054 (9th Cir. 2009) (the Eighth Amendment and substantive due process guarantee that "inmates and detainees receive constitutionally adequate medical and mental health care.").

However, "[w]ith regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes."  *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002); *Gary H. v. Heggstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987) (the Due Process Clause "implicitly incorporates the cruel and unusual punishments clause standards").

The Eighth Amendment protects inmates from cruel and unusual punishment, which includes the denial of medical care.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  If an official is deliberately indifferent to a "substantial risk of serious harm to an inmate–including the deprivation of a serious medical need"– he violates the Eighth Amendment, as well as the Due Process Clause.  *Conn*, 572 F.3d at 1054-55 (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).

1    Thus, to set forth a constitutional claim predicated upon the failure to provide medical

2    treatment,

3    [f]irst, the plaintiff must show a "serious medical need" by
     demonstrating that "failure to treat a prisoner's condition could

4    result in further significant injury or the 'unnecessary and wanton
     infliction of pain.'" Second, the plaintiff must show the defendant's

5    response to the need was deliberately indifferent.

6

7    *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).  The second

8    prong requires both "(a) a purposeful act or failure to respond to a prisoner's pain or possible

9    medical need and (b) harm caused by the indifference." *Id.*  Deliberate indifference thus requires

10   an objective risk of harm and a subjective awareness of that harm.  *Farmer*, 511 U.S. at 837;

11   *Conn*, 572 F.3d at 1055.

12       Here, Defendants have shown no genuine issues of material fact exist to support

13   Plaintiff's claims that Defendant Costa denied him adequate medical care.  *Celotex*, 477 U.S. at

14   323.  While the evidence in the record does show Plaintiff's August 11, 2005 kitchen injury, in

15   light of his pre-existing condition, was sufficiently serious to require some medical attention, *see*

16   Compl. at 3, 8; Pl.'s Ex. B; Lacy Decl. ¶ 6, Def.'s Exs. F, J, Plaintiff has failed to "present

17   significant, probative evidence tending to support his allegations," *Bias*, 508 F.3d at 1218, and

18   therefore, no rational jury could find Costa acted with "deliberate indifference" in response to

19   his need.  *See Celotex*, 477 U.S. at 323; *Conn*, 572 F.3d at 1055.

20       Specifically, the only evidence pertaining to Defendant Costa and Plaintiff's injury are

21   Plaintiff's sworn allegations that after another co-worker pushed a food cart into his left hand

22   and thumb, Defendant Costa directed him to sit, downplayed his pain by saying, "Your hand[]

23   is not yet falling [off]," and told him he would "bring [Plaintiff] to the doctor when he [fe[lt] like

24   it." (Compl. at 8.)  Plaintiff claims he was injured at 11:45 a.m, and to have waited two hours

25   before Costa transported him to medical, and an additional "two hours and thirty minutes" *after*

26   he arrived at the infirmary (*id*. at 9); however, the MCC's medical records report Plaintiff was

27   injured at 1:30 p.m. and transported to Health Service at 2:40 p.m.  (Def.'s Ex. F.)  Thus,

28   construing this evidence in the light most favorable to Plaintiff, it appears he was required *at*

*most* to have waited almost four hours before being treated in the infirmary.  *See* Compl. at 8-9; *cf.* Def.'s Ex. F.

A mere delay in treatment does not constitute a violation of the constitution, unless the delay was harmful.  *See McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *Hunt*, 865 F.2d at 200 ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation."); *see also Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable.").

In this case, absolutely nothing in the record suggests Defendant Costa acted with deliberate indifference to Plaintiff's serious medical need *or* that he was harmed by any delay in getting to Health Services.  *See McGuckin*, 974 F.2d at 1060.  In fact, Plaintiff's medical records corroborate both Defendant Costa and Dr. Lacy's assessment of Plaintiff's August 11, 2005 injury as a "non-emergency."  *See* Def.'s Exs. F, J; Costa Decl. ¶¶ 9-12; Lacy Decl. ¶ 6.  When Plaintiff arrived at Health Services, Physician's Assistant Camagay noted only minimal swelling to Plaintiff's left thumb, a limited range of motion, no hematoma and no abrasions.  (Def.'s Ex. F.)  Camagay recommended an x-ray, prescribed Plaintiff Ibuprofin or Motrin for pain and swelling, and classified his injury as requiring only "minor first aid." (*Id.; see also* Def.'s Ex. J.)  An x-ray taken later that same day, and another taken on August 26, 2005 revealed no acute fracture.  (Defs.'s Exs. I, N; Lacy Decl. ¶ 6.)  And, while Plaintiff later developed and was treated for an infection, (Def.'s Exs. K-M; Lacy Decl. ¶ 8), and on October 5, 2005, received orthopedic surgery on his hand in order to repair nerve damage and scarring which Dr. Otero attributed to "multiple past surgeries and infections," (Lacy Decl. ¶ 13, Def.'s Ex. Q), none of this evidence shows that Defendant Costa caused either his initial injury–or any additional harm to him simply by making him wait in the kitchen for a transport officer before releasing him to Health Services.  *See McGuckin*, 974 F.2d at 1059-60; *Shapley,* 766 F.2d at 407; *Wood v. Housewright*, 900 F.2d 1332, 1335-36 (9th Cir. 1990) (finding mere delay in providing medical treatment, without a showing of resulting harm, insufficient to show deliberate indifference).

Moreover, the fact that Defendant Costa allegedly made harsh or unsympathetic "comments" to Plaintiff in the kitchen in response to his pain does not, by itself, rise to the level of deliberate indifference. *See e.g., Oltarzewski v. Ruggerio*, 830 F.2d 136, 138 (9th Cir. 1987) (finding claims of verbal harassment or abuse by guards do not state a constitutional deprivation); *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1345 (9th Cir. 1981) (noting that prisoners have "no constitutional right not to be the subject of swearing"); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard.").

Thus, because the Court finds the evidence, when viewed in the light most favorable to Plaintiff, reveals no genuine issues of material fact as to Plaintiff's inadequate medical care claim against Defendant Costa, it need not further determine whether Costa is also entitled to qualified immunity because the law was not "clearly established." *Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." ); *Pearson*, 129 S. Ct. at 818 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Accordingly, Defendant Costa's Motion for Summary Judgment as to Plaintiff's inadequate medical care claims is GRANTED.

## V.    Conclusion and Order

For all the reasons set forth herein, the Court:

1)    DISMISSES the action as to Defendants MCC and John Does 1-10 for failure to prosecute and for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 4(m);

2)    GRANTS Defendant Costa's Motion to Dismiss Plaintiff's state law tort claims as barred by the FELRTCA;

3)    GRANTS Defendant Costa's Motion to Dismiss Plaintiff's state law tort claims under the FTCA as pre-empted by 18 U.S.C. § 4126;

1         4)     GRANTS Defendant Costa's Motion for Summary Judgment as to Plaintiff's

2               inadequate medical care claims pursuant to FED.R.CIV.P. 56;

3         5)     DIRECTS the Clerk of Court to enter judgment for Defendant Costa; and

4         6)     CERTIFIES that an *in forma pauperis* appeal in this matter would *not* be taken in

5               good faith.  *See* 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED.**

DATED:  November 16, 2009

IRMA E. GONZÁLEZ, Chief Judge
United States District Court

09cv444